DANIEL CRUTCHLEY, Administrator, Appellee, v. FRANK BRUCE, Appellant.

No. 41030.

JANUARY 12, 1932.

REHEARING DENIED JUNE 24, 1932.

Longley, Ransier & Frank, for appellant.

Frank F. Messer, for appellee.

FAVILLE, J.—There is a paved highway between Cedar Rapids and Iowa City. The paving is 18 feet in width. At the place of the accident involved in this case the road extends in a northwesterly and southeasterly direction. About three or four miles northwest of the town of North Liberty a country road crosses said highway at a place known as Young's Crossing. The crossing is not obscured. There is a wide curve as the road swings to the northwest near the crossing, but there is not a sharp curve or turn. There are no trees, buildings, or other obstructions along the highway at or near the crossing. Near the intersection of the paved highway and the country road there is a platform for milk cans, and a mail box called "the Crutchley mail box" on the north side of the paved highway. Some 600 feet northwest of the Crutchley mail box is another milk can platform and a mail box called "the Brender

mail box,'' both located on the south side of the paved highway.

On the morning in question, appellee's intestate, a boy nearly eight years of age, came from his house, about 90 rods north and east of Young's Crossing, to the Crutchley mail box to meet the driver of a milk truck and get a milk check. The boy came to the paved highway and later was joined by the Brender boy, who was about seven years of age. The two boys went to the Brender mail box, where they met the milk truck, which then went east to the Crutchley mail box. The driver of the milk truck gave the two boys permission to ride on the back of the milk truck among the milk cans. The boys got in the truck on their knees, with their hands on the milk cans, and in this way rode back to a point nearly opposite to the Crutchley mail box, where the driver stopped the milk truck on the south side of the highway, with the two right wheels off the paving and the two left wheels on the paving. Not quite half the milk truck was off the paving, apparently.

The milk truck had a cab in front in which the driver rode and a platform to the rear on which the milk cans were carried. The sides of this platform were 12 inches high and the platform extended about 7 feet back from the cab, and the end was about 2 feet back of the rear wheels. When the driver stopped the milk truck he alighted from the cab and stepped down on the paving on the north side of the truck to untie a rope that held the milk cans on the platform. As this milk truck stopped, a cattle truck that had been following it turned out to the left and passed the milk truck and proceeded east.

At this juncture the appellant's car approached from the east. The appellant's car turned to the right to avoid the cattle truck, and in so doing was partially off the paving, on the shoulder of the road. The car then swung back upon the paving and proceeded past the standing milk truck. Just at the instant when appellant's automobile was opposite the rear end of the milk truck, the appellee's intestate jumped or stepped directly in the path of appellant's car, and was struck and killed instantly.

Appellant is a traveling salesman and is an experienced automobile driver. At the time of the accident he was driving from Iowa City to Cedar Rapids. His car was a Hudson super-

six coach. Appellant's wife and a Mrs. Shannon were in the rear seat of appellant's car. In the front seat with the appellant were his son, then seven years of age, and the son of Mrs. Shannon, then ten years of age.

Appellant moved for a directed verdict both at the close of appellee's evidence and at the close of all the evidence. The motion was overruled, the cause was submitted to the jury, and a verdict for $2500 for the appellee was returned.

The court withdrew from the jury all grounds of negligence except the following:

"1. In operating his automobile in a careless and imprudent manner and at a rate of speed that endangered the life of the decedent.

"2. In operating his automobile at a greater rate of speed than provided by Sec. 5029 of the Code of 1927.

"3. In not having and keeping his automobile under control and in not reducing the speed to a reasonable and proper rate as was required by law.

"4. In failing to sound a bell, horn or other signalling device as a warning of the approach of his automobile."

Sixty-seven alleged errors are relied on for reversal. It will not be necessary for us to consider all of them in this opinion.

I. At the time of the accident, to wit, April, 1929, Sec. 5029 of the Code of 1927 was in force, and it prohibited driving a motor vehicle on the highways of this state at a greater speed than forty miles per hour.

One of the specifications of negligence alleged was that appellant was operating his automobile at a greater speed than provided in said statute.

Appellant testified that as he approached the place of the accident he was driving "around forty-five to fifty miles per hour." The important question at this point is whether or not the speed of appellant's car was the proximate cause of the injury to appellee's intestate.

We had a similar question before us in Pettijohn v. Weede, 209 Iowa 902, and in McDowell v. Interstate Oil Company, 208 Iowa 641, wherein we held that even though the automobile which caused the injury was being driven at an excessive or

unlawful speed, this would not justify recovery unless it appeared that such excessive speed was the proximate cause of the injury. Even though the driver of an automobile may violate the law in some particular, still this cannot be made the basis of recovery by an injured party unless the illegal act was in some way the proximate cause of the injury. For example, a driver might not have his car properly equipped with brakes in good order, as required by the statute, but still, unless such failure was in some way the proximate cause of an injury, it could not be made the basis of recovery. As bearing on the question of excessive speed not being a ground of recovery when not shown to be the proximate cause of the injury, see Silberstein v. Showell, Fryer & Co., 109 Atl. 701 (Pa.); McAvoy v. Kromer, 120 Atl. 762 (Pa.); Bowman v. Stouman, 141 Atl. 41, 292 Pa. 293; Havermale v. Houck, 89 Atl. 314 (Md.); Moran v. Smith, 95 Atl. 272 (Me.); Sorsby v. Benninghoven, 161 Pac. 251 (Ore.); Winter v. Van Blarcom, 167 S. W. 498 (Mo.); Burlie v. Stephens, 193 Pac. 684 (Wash.). In the instant case, the accident would have happened just as readily had appellant been driving his car at a much less rate of speed and well within the statutory limit. It was not the speed of appellant's car that was the proximate cause of the injury to the boy.

II. The court also submitted to the jury as a ground of negligence the failure of appellant to sound a bell, horn, or other signalling device, as a warning of the approach of his automobile.

There was evidence that the appellant sounded his horn as he approached and was about to pass the standing milk truck. There was negative evidence of witnesses for appellee that, being in a position to hear such a signal, they did not hear any.

We are constrained to hold that under the circumstances disclosed in this record it cannot be held that the failure of the appellant to sound his horn, if the jury could find that he failed so to do, was the proximate cause of the injury to the boy. Nor can we hold that under the circumstances disclosed any duty rested upon the appellant to sound his horn as he was about to pass the standing milk truck. In broad daylight the appellant was approaching a standing milk truck, on the proper side of the highway and partly off the paved portion. The

driver of the truck was standing beside it. There was not the slightest thing to indicate to the driver of the automobile in any way that a boy was among the milk cans on the rear portion of the truck, or near there, and that he might suddenly dash into the path of appellant's automobile. A driver could not reasonably be expected, under such circumstances, to anticipate that a person might so appear suddenly in his path, and hence be required to give a signal of his approach. It cannot be said that a person of ordinary and reasonable care and prudence is guilty of negligence in not anticipating that from behind every standing vehicle he may pass on the highway some pedestrian may suddenly dash into the pathway of his car and that he is guilty of negligence in not giving a signal of his presence in passing every such standing vehicle.

A number of cases have been before this court involving facts very similar to those of the instant case, and we have announced the rules of law pertinent thereto. We deem it unnecessary to review the cases in detail. See, however, Bishard v. Engelbeck, 180 Iowa 1132; Borland v. Lenz, 196 Iowa 1148; Brekke v. Rothermal, 196 Iowa 1288; Faatz v. Sullivan, 199 Iowa 875; Williams v. Cohn, 201 Iowa 1121; Klink v. Bany, 207 Iowa 1241; Pettijohn v. Weede, 209 Iowa 902.

III. The court submitted to the jury the question of alleged negligence of the appellant in operating his automobile "in a careless and imprudent manner" and "in not having and keeping his automobile under control."

As we have seen, the speed of the automobile was not the proximate cause of the injury to appellee's intestate, nor was the appellant under the facts shown in the record guilty of negligence in not sounding his horn or signalling device when about to pass the milk truck.

It is argued by appellee that appellant was driving in a careless and imprudent manner because he swerved from the paving upon the shoulder of the highway in passing the cattle truck and then swung back upon the highway at a speed in excess of forty miles per hour. The question at this point is whether the appellant drove in such a "careless and imprudent manner" as caused the injury. It cannot be said that it was careless or imprudent for the appellant to pass the standing milk truck in the manner in which he did under the facts and

circumstances disclosed in this record. Unless he acted differently than an ordinarily prudent and cautious man would have acted under all the circumstances he was not guilty of driving in "a careless and imprudent manner." There must be some evidence at least tending to show wherein the appellant was driving in a careless and imprudent manner and that such conduct was the proximate cause of the injury, before appellant could be held liable or a jury question be presented.

We have held that a motor vehicle is "under control" within the meaning of the statute when it is moving at such a speed and the driver has its mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. Carruthers v. Campbell, 195 Iowa 390, at 392; Gose v. True, 197 Iowa 1094, at 1100; Carlson v. Meusberger, 200 Iowa 65, at 75; Altfilisch v. Wessel, 208 Iowa 361, at 367.

IV. Appellee contends the jury could have found that appellant was negligent in driving on the wrong side of the paving and beyond the line which marks the center of the highway and that the injury resulted because thereof. It is sufficient to say that this ground of negligence was not submitted to the jury but was withdrawn by the trial court; hence the question is not involved in this appeal.

Upon the record we are constrained to hold that the court erred in not sustaining the appellee's motion for a directed verdict made at the close of all the evidence.

In view of our conclusion we deem it unnecessary to consider other errors relied upon for reversal.

The judgment is—Reversed.

WAGNER, C. J., and EVANS, STEVENS, DE GRAFF, ALBERT, and GRIMM, JJ., concur.

MORLING and KINDIG, JJ., dissent.

KINDIG, J. (dissenting)—I dissent from Division II of the majority opinion wherein it is said that the appellant's failure to sound his automobile horn did not present a question of negligence for the jury.

It occurs to me that a jury question on that proposition is present in this record. When a truck or automobile is parked along the side of the highway, it is notice to the driver of an

approaching car that someone is on, under, or near the standing truck or car. Maybe the truck or car was stopped for the purpose of adjusting the machinery, and a man may be under the car, and might crawl out into a place of danger if not warned. Or it is possible that the driver may step from behind the parked vehicle into a place of danger if not warned. Of course, the mechanic, driver, or other person in or near the parked truck or car must use due care. That, however, is a question that pertains to contributory negligence. The child in this case was not driving the parked car. Neither was he a mechanic. Yet the driver of the parked car or a mechanic might have jumped from the car to the highway the same as did the child. Had a mechanic or driver so done, he would have been killed or injured under the circumstances.

Perhaps it is true that the appellant did not know the child in the case at bar was sitting back of the cream can. Likewise, it is perhaps true that the appellant did not know that such unseen child would jump from a place of safety into one of danger. Thus it appears how necessary under the circumstances it was for the appellant to give warning of the fast approach of his automobile. Such warning is for the very purpose of preventing an unseen person from doing something that the driver of the on-coming car does not know will, but should anticipate might, be done. Common experience teaches us that men, women, and children may be in or near a standing truck or vehicle on the highway. Many times, unless warned, these people will step from a place of safety into one of danger on the highway. These actions of persons in or near a parked truck or car should be anticipated by the driver of an on-coming car. Said driver of the on-coming car should operate his vehicle with those facts in mind and give warnings of his approach accordingly.

For the purposes of this discussion, it matters not whether the child in the case at bar jumped or crawled or walked. The necessity for warning on the part of the driver of the on-coming car is the same. It is possible that the child who jumped might, if he were old enough, be guilty of contributory negligence, but that is another question. Here the proposition is whether appellant was guilty of negligence. I think a driver who is going 45 or 50 miles an hour passing a standing car certainly has

a duty to warn those who may be on, under, or around the standing car that the fast-moving vehicle is approaching. On this question I think the situation would be different were the car standing on a city or town street. In cities, automobiles are expected to be parked along the streets and the occupants in a place of safety either on the sidewalk or in the parked car, but in the country this is not true, and generally a car is not there parked unless to repair a breakdown or for other temporary purposes. When thus parked in the country for such temporary purpose, the driver or passengers are generally along or near the parked car. Moreover, it is the general rule that the speed of passing automobiles in the country is much greater than the speed of such automobiles in the city.

At least, a jury question is presented at this point. I would affirm.

Mr. Justice MORLING joins in this dissent.