ANNA MEGGERS, Appellee, v. C. R. KINLEY, Appellant.

No. 42792.

MARCH 10, 1936.

Lane & Waterman, for appellant.

Miller & Claussen and E. C. Halbach, for appellee.

PARSONS, J.—On June 11, 1933, between 9 and 10 o'clock p. m., the plaintiff, Anna Meggers, while riding as a guest in the automobile of one Henry Moeller, traveling on highway No. 136 in an easterly direction toward Clinton, Iowa, was injured when the car in which she was riding collided with the rear end of a parked truck belonging to the defendant.

Plaintiff alleged in her petition: That the paved road at that place lay in a curved and turning direction, with a hill or slight elevation in the highway at this point. That the truck was parked on the right half of the pavement, around a curve and beyond the vision of persons operating their cars in an easterly direction on said highway, and in such a position that the driver of the Moeller car was unable to see said truck, or that it was occupying a paved portion of the highway, until the said Moeller was close upon the truck. Plaintiff alleged the truck was without lights, and that there were no flares or other warning lights or signals on or adjoining any portion of the truck, to warn persons traveling on the paved portion of said highway, and that the truck was carelessly and negligently allowed to stand on the paved highway, and constituted an obstruction thereon.

That as a result of the collision the plaintiff suffered a severe fracture of the left kneecap, same being broken in three places, a fracture and broken fibrous capsule covering the left kneejoint, and the ligaments in said left knee were sprained, and the injury was such that the entire kneejoint and capsule was filled with a large blood clot. The plaintiff also received severe

bruises and cuts on the right leg, a severe cut over the right eyebrow, which would leave a permanent and noticeable scar, another cut on the center of the forehead between the eyes. That the tear sac was torn from her left eye, and plaintiff suffered from a severe surgical shock and considerable loss of blood. That the left side of her face was severely cut and bruised, as well as a cut on her left hand. Plaintiff was required to undergo two operations, and was confined to a hospital for about five weeks, and, after returning to her home, was required to have the attendance of a practical nurse for another four weeks. That plaintiff was incapacitated for a period of approximately nine weeks, and that she suffered pain and mental anguish, and was permanently and partially disabled by reason of the severe injuries to her left leg, and asked judgment for $15,322.75.

The defendant for answer denied that he was guilty of any negligence which caused or contributed to plaintiff's injury, and alleged that her injuries were caused by the negligence of plaintiff, and denied any indebtedness to plaintiff whatever.

An amendment to the petition set forth that the truck was parked just east of the top of the hill, so that the operator of a car traveling up the hill could not see the truck until nearly upon it. The plaintiff had for witnesses Henry Moeller, driver of the car, a physician, and herself.

Plaintiff was a woman 58 years of age at the time of the accident, and she was keeping house for Mr. Moeller. They were riding in his car when the collision took place, at about 9 o'clock, going to Clinton. The evening was rather dark, and it was lightning once in a while. There were lights on the car in which plaintiff was riding. Plaintiff looked to the east as they were going up the hill, and observed no lights ahead on or about the truck and did not see the truck until within twenty or thirty feet from it. Then she exclaimed, ''Oh, there is a truck!'' and Moeller slammed on his brakes, but did not stop until he ran into the rear of the truck. After they struck, they just sat there, unable to see anything, until a man came to her window and asked if she were hurt. She told him she was, and he walked away. That in a few minutes she noticed a light coming along on Mr. Moeller's side of the car, and they then could see the truck in front of them. Plaintiff claims she did not see the driver of the truck put the light there, but she heard him walking; she could see a light in their car, something she could not see before. Both of her knees

were terribly hurt, and she had an awful jar in the back and could not move. Finally she was removed in an ambulance to the hospital, where she remained for a month, receiving treatment. She said her knee pained her all the time, and the doctor continued to call on her regularly for six or seven weeks. Then she began to do her housework as housekeeper about two months after the accident, about September, 1933. The plaintiff said before the accident she was in good condition, had full use of her knees, and was able to do all her housework; that she received $4 per week and board and room; but that since September she had been unable to do the housework as before and was able to get only $2 a week. She claimed she could not bend, stoop over, climb, or anything like that; that she massaged her knee and leg every day, and could not bend it without pain. The plaintiff said the windshield and glass on both sides of the car in which she was riding were perfectly clear, and there was nothing to interfere with her view; that the car lights on Moeller's car were lit all the time, until the crash. That as they approached the top of the hill she saw a flash of lightning in the southeast, and immediately after she looked ahead and there was the truck. She said she always depended on Mr. Moeller to look ahead and watch while he was driving; that he was always a safe driver, and she never kept a lookout, but depended upon him to look while driving. She had ridden in the car with Moeller before the accident and knew he was a careful driver.

There was a conflict in the testimony as to whether the truck was standing east or west of the highest point on the highway; that is to say, which might be said to be the point where the rise from the west ended and the decline toward the east commenced. There was substantial testimony on each side as to the truth about these things; plaintiff contending that the truck was parked just over the rise in the highway as one travels east, and the defendant contending that it was parked to the west of the top of the rise. There was substantial testimony sustaining each contention. There was a disagreement as to whether or not there were flares on either side of the truck as required by chapter 83 of the 45th General Assembly (section 1), which took effect by publication thereof on May 4, 1933. And in section 2 thereof it is provided that any person or persons violating the provisions of section 1 shall be guilty of a misdemeanor and punishable as such.

So the jury, under the evidence, had a right to find the facts as claimed by the plaintiff, or as claimed by the defendant, and the finding by the jury in either way is respected by this court.

■■■ We think the evidence in the case shows that the plaintiff was a guest of the driver of the automobile, and was riding with him as such. Moeller owned the car; had full management, control, and supervision thereof. Therefore his negligence, if any, would not be imputable to the plaintiff. Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; Wagner v. Kloster, 188 Iowa 174, 175 N. W. 840.

■■■ There was a motion for a directed verdict made by the defendant at the close of the evidence, which motion was overruled, and the jury returned a verdict for the plaintiff. Proper exceptions were filed to the instructions and objections made thereto. We think the instruction in regard to contributory negligence is decisive of this case. In instruction No. 9 the court told the jury:

"In this same connection you are instructed that the plaintiff must show, as hereinbefore stated, that she was free from contributory negligence. By contributory negligence is meant an act or omission to act amounting to a want of ordinary care on the part of the plaintiff which, occurring and cooperating with such an act or omission to act on the part of the defendant, becomes or constitutes a proximate cause of the former's injuries, without which the injuries complained of would not have been sustained. And if you find from the evidence that plaintiff was guilty of any degree of negligence which cooperated in producing the injury complained of or which caused or contributed to cause the injury complained of, or if you find that the plaintiff has not established to your satisfaction her freedom from contributory negligence, she cannot recover. But, should you find that the plaintiff's injuries, if any, were the result of defendant's negligence, and plaintiff was not guilty of contributory negligence on her part, then you should find for the plaintiff."

Exception was filed to this instruction, to the use of the language therein defining contributory negligence, to wit: "By contributory negligence is meant an act or omission to act amounting to a want of ordinary care on the part of the plaintiff which, occurring and cooperating with such an act or omission to act on the part of the defendant, becomes or constitutes

a proximate cause of the former's injuries." We think this instruction cannot be justified under the doctrine laid down in the number of cases cited.

That this constitutes error we think is held in Hamilton v. Boyd, 218 Iowa 885, 256 N. W. 290; Hellberg v. Lund, 217 Iowa 1, 250 N. W. 192; Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270; Towberman v. Des Moines City Ry. Co., 202 Iowa 1299, 211 N. W. 854; Albert v. Maher Bros. Transf. Co., 215 Iowa 197, 243 N. W. 561, 563.

In Hamilton v. Boyd there was a verdict for the plaintiff and defendant appealed. Judge Claussen, the writer of the opinion, said:

"In an instruction on contributory negligence the court told the jury that contributory negligence was such act or omission to act on the part of plaintiff as amounts to a want of ordinary care which contributes proximately in any way or in any degree directly in producing the injury complained of. Proximate cause was defined as being the moving or producing cause without which the injury would not have occurred." The court further said: "The instruction on contributory negligence is erroneous. When read in connection with the instruction on proximate cause, it is clearly prejudicial. The relationship between plaintiff's injuries and his negligence need be no more than causal. Plaintiff's negligence, to prevent recovery, need not be a proximate cause of the accident. Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270, and Hellberg v. Lund, 217 Iowa 1, 250 N. W. 192."

In the Hellberg case there was a verdict for the defendant, and the plaintiff appealed. The same judge wrote this opinion as wrote the opinion in the Hamilton case. This case concerned an instruction on contributory negligence, and the court said:

"The trial court advised the jury, in substance, that by such negligence was meant negligence on the part of plaintiff which caused or contributed to cause the injuries complained of and without which such injuries would not have been sustained. The court further told the jury in effect that a failure on the part of plaintiff to exercise ordinary care for his own safety would constitute contributory negligence and would bar his right to recover if such failure caused or contributed to cause his injuries."

Reviewing the Towberman and Hogan cases the court said:

"The rule as it now stands is elementary in simplicity, and we are not disposed to cast doubt on it by overnicety in distinctions. Negligence which causes or contributes to cause an injury bears causal relationship to such injury, and certainly negligence, but for which the injury would not have occurred, is causally related to the injury." The court then limits this by saying, "The instructions on contributory negligence have been considered in the light of exceptions taken to them by plaintiff," and says further, "It has been noted that the court advised the jury that contributory negligence was negligence on the part of plaintiff, without which the injuries complained of would not have been sustained. Such negligence need go no further than to cause or contribute to cause the injuries complained of."

In Hogan v. Nesbit, the opinion was written by Judge Kindig, who says:

"Perhaps, in discussing the subject, this court in some of its opinions has used the sentence 'contributory negligence must be such negligence as contributes proximately to the injury' ", citing cases thereto, "but when employing that language the writers of the opinions intended to indicate the thought expressed by the more apt and appropriate sentence 'if the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery,' " citing Albert v. Maher Bros. Transf. Co., 215 Iowa 197, 243 N. W. 561, 563, and says further: "Manifestly by failing to stop on the north side of the arterial highway, as required by law, the appellant's intestate was guilty of negligence which contributed in some degree to his injury and death. This is true even though the appellee negligently drove his automobile on the wrong side of the arterial highway across the intersection. If the appellee had driven on the right, rather than on the left, side of the highway, so far as this particular charge of negligence is concerned, he would not have been negligent. The very fact that the appellee, under the said assumption, negligently drove on the wrong side of the highway, furnishes the negligence to which the negligence of appellant's intestate can contribute." The court further said: "In view of the fact that the negligence of the appellant's intestate

was a contributing cause to his injury and death, there can be no recovery of the damages sought in the case at bar unless it be under the rule known as the 'last clear chance'."

In the Albert case, supra, the court says:

"In Towberman v. Des Moines City Ry. Co., 202 Iowa 1299, 211 N. W. 854, this court declared: 'It is well stated in Banning v. Chicago, R. I. & P. R. Co., 89 Iowa 74, at page 81, 56 N. W. 277, 279, where we said: "If the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery." ' " And the court says: "That quotation in the Towberman case was selected after a review of many decisions. We made the selection because of our desire to present the quotation as a model for future instructions. Such model later has been followed and approved. Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; O'Hara v. Chaplin, 211 Iowa 404, 233 N. W. 516. To avoid confusion or uncertainty, it will be well for trial courts to carefully follow this model in the future."

So, after a review of these decisions, it seems to us there is no doubt it was error to give the instruction complained of, for in there the court says:

"By contributory negligence is meant an act or omission to act amounting to a want of ordinary care on the part of the plaintiff, which, occurring and cooperating with such an act or omission to act on the part of the defendant, becomes or constitutes a proximate cause of the former's injuries, without which the injuries complained of would not have been sustained."

True, the court goes on in the instruction, in the instant case, and says:

"And if you find from the evidence that plaintiff was guilty of any degree of negligence which cooperated in producing the injury complained of or which caused or contributed to cause the injury complained of, or if you find that the plaintiff has not established to your satisfaction her freedom from contributory negligence, she cannot recover."

In a reading of this instruction, whatever the court is speaking of as contributory negligence, the jury would necessarily have in mind the definition given for contributory negli-

gence in the first part of the instruction, which requires that it "becomes or constitutes a proximate cause of the former's injuries, without which the injuries complained of would not have been sustained."

The real rule is, as many times stated by this court, if the injured party contributed in any way or in any degree directly to the injuries, there can be no recovery. So, under this construction, we have no option but to reverse the case. We have gone carefully over the record. We think this disposition of the case makes the discussion of any further questions unnecessary, and therefore, on the error assigned for giving of instruction 9, this case is reversed.—Reversed.

DONEGAN, C. J., and ALBERT, KINTZINGER, RICHARDS, ANDERSON, and STIGER, JJ., concur.